OPINION OF THE COURT

Per Curiam.

Order entered July 28, 1980 is reversed, with $10 costs; the tenant’s motion to dismiss the petition (CPLR 3211, subd [a], par 7) is denied.
The record before us is sparse and its principal elements are easily recounted. Landlord served a notice to cure, dated January 24, 1980, upon Julia Weiss “and all other occupants” of the apartment here at issue. That notice to cure stated, “you are violating a substantial obligation of *590 your tenancy *** viz., you are allowing a person who is not a tenant to reside in and occupy the premises.” The January 24,1980 notice afforded tenant 10 days to cure the alleged violation. On February 5, 1980, landlord served upon the tenant a 30-day notice of termination, which purported to terminate the subject tenancy on March 17, 1980, on the ground that the violation set forth in the January 24, 1980 notice had not been cured. The instant holdover proceeding was commenced after the tenant failed to surrender the premises as demanded in the February 5, 1980 notice of termination. The petition indicates that the premises are subject to rent control.
Tenant Weiss moved to dismiss the petition for failure to state a cause of action. In support of that motion Ms. Weiss submitted an affidavit, dated April 21, 1980, in which she states, upon information and belief, that the unauthorized occupant referred to by the landlord is one Jack A. Wertheimer “who lives in my apartment, who did not sign the lease, and to whom I am not related by blood or marriage.” Ms. Weiss goes on to allege in her affidavit in support of the motion to dismiss, again upon information and belief, that “the landlord through his attorney has stated that if I marry Mr. Wertheimer, he will withdraw his claim that I have violated the lease and will not seek to evict me. If I remain single, this action will continue. I am moving to dismiss on the grounds that these actions violate the State Human Rights Law [Executive Law] § 296(5)(a) and the City Human Rights Law § Bl-7.0(5a) which prohibit discrimination in housing on the basis of marital status.” Finally Ms. Weiss notes in her affidavit of April 21, 1980 that she does not believe that the nature of her relationship with Mr. Wertheimer is relevant to her motion. She states, however, that the court has inquired into that issue, and she goes on to note that Mr. Wertheimer and I have a “close and loving relationship”.
In an affidavit submitted on behalf of the landlord by the managing agent for the subject premises, in opposition to tenant’s motion to dismiss the petition, it is stated that Ms. Weiss moved into the apartment at issue on or about February 1, 1967 pursuant to a written lease between the then landlord and her husband, Lawrence Weiss. Ms. *591 Weiss was never a signatory to that lease. Mr. Weiss subsequently vacated the premises, but it is unknown whether Mr. Weiss and Ms. Weiss are legally separated or divorced (whether Ms. Weiss or Mr. Wertheimer are single or married is not revealed in the record; what is clear is that they are not married to one another). Thereafter and shortly before the commencement of this proceeding an “unauthorized occupant”, identified in the caption as “John Doe” (i.e., Mr. Wertheimer) moved into the apartment.
Landlord, through its managing agent’s affidavit in opposition to tenant’s motion to dismiss the petition, professes no concern as to the nature of the relationship between the unauthorized occupant of the apartment and Ms. Weiss, other than that he is not a member of the immediate family of the tenant. Landlord notes, however, that were he (the unauthorized occupant) a member of the tenant’s immediate family, there would be no basis for the proceeding.
Although the lease underlying Ms. Weiss’ tenancy has not been included in the record on appeal, the lease, as quoted in the opinion of the court below, contains a restrictive covenant that “the demised premises and any part thereof shall be occupied only by tenant and members of the immediate family of tenant”. The occupancy of Ms. Weiss — she not having been a party to the original lease — was sanctioned by virtue of her status as a member of the original tenant’s immediate family. The New York State Attorney-General intervened in this proceeding and, in both the court below and on this appeal, has joined with the tenant in arguing that the petition fails to state a cause of action (citing Executive Law, art 15, § 296, subd 5, par [a] [State Human Rights Law]).
Section 296 (subd 5, par [a]) of the Executive Law provides that:
“It shall be an unlawful discriminatory practice for the owner *** or managing agent of, or other person having the right to sell, rent, or lease a housing accommodation * * * or any agent or employee thereof:
“(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a *592 housing accommodation because of the *** marital status of such person or persons.” (L 1975, ch 803, eff on the 60th day after August 9, 1975.)
Section 296 (subd 5, par [a], cl [2]) contains an identical provision prohibiting discrimination “in the terms, conditions, or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith.”
Section Bl-7.0 (subd 5, par [a]) of the Administrative Code of the City of New York (City Commission on Human Rights) is identical to section 296 (subd 5, par [a]) of article 15 of the Executive Law (State Human Rights Law) and section Bl-7.0 (subd 5, par [a], cl [2]) of the Administrative Code is identical to section 296 (subd 5, par [a], cl [2]) of the Executive Law.
A motion to dismiss for failure to state a cause of action may lie if the pleading is defective on its face, or, even if the claim is perfectly pleaded, if, upon affidavits and other permissible proof, the movant is able to go behind the pleading and establish that it lacks merit (Siegel, New York Practice, §265; Kelly v Bank of Buffalo, 32 AD2d 875). “[I]n order to succeed on such a motion, the defendant must convince the court that nothing the plaintiff might reasonably be expected to prove would help him; that the plaintiff simply does not have a claim.” (Siegel, New York Practice, §265.)
The pleading at issue is not defective upon its face. Landlord seeks to enforce a restrictive covenant contained in the lease executed at the inception of the subject tenancy. In the case of a statutory tenancy — such as that of the tenant Weiss — “[w]ith the exceptions of the duration of the term, and the amount of rent payable, the rule established by the weight of authority is that insofar as the provisions of a lease which has expired are not in conflict with the then prevailing emergency rent statutes, and are not confined to the period of the expired lease, they are projected into the statutory tenancy, and will continue in effect during the term of the statutory tenancy.” (1 Rasch, New York Landlord and Tenant [2d ed], § 286, p 372; see, also, Barrow Realty Corp. v Village Brewer Rest., 272 App Div 262; Cecere v Pegler, 90 NYS2d 528 [App Term].)
*593 The law favors free and unrestricted use of property, and all doubts and ambiguities in a lease will be resolved in favor of the natural right to free use and enjoyment of premises against restrictions (Eagle Spring Water Co. v Webb & Knapp, 236 NYS2d 266; Arrathoon v Pergament Oceanside Corp., 53 Misc 2d 959, affd 26 AD2d 626, affd 19 NY2d 923). A landlord, however, does have the right to limit a tenant’s use of the premises (Lyon v Bethlehem Eng. Corp., 253 NY 111; Phillipse Towers v Ortega, 61 Misc 2d 539), and where covenants restricting the use of property are reasonable and not contrary to public policy, they will be enforced by the courts. Indeed it has long been held that parties to a lease may, by express provision therein, restrict the uses to which the lessee may put the demised premises (Ann., 148 ALR 583, 587, et seq.), and lease provisions restricting the use of premises to “tenant and members of tenant’s immediate family” — the very provision here sought to be enforced by the landlord — have consistently been sustained (Jema Props. v McLeod, NYLJ, June 7, 1976, p 8, col 1 [App Term]; One-Two East 87th St. Corp. v Rees, 35 Misc 2d 158 [App Term]; Irweis Holding Corp. v Glenn, 2 Misc 2d 804; Mideast Holding Corp. v Tow, 60 Misc 2d 422; cf. Fraydun Enterprises v Ettinger, 91 Misc 2d 119 [App Term]; Matter of Herzog v Joy, 74 AD2d 372). Tenant alludes to no judicial or statutory authority which expressly proscribes or declares it to be against public policy for landlord to limit the use of demised premises to the tenant or tenants and members of his or their immediate family.
Believing as we do that the pleading is sufficient on its face, the record must be examined to determine whether the tenant has offered evidence sufficient to establish that the landlord does not have a cause of action. Tenant sought to establish upon her motion to dismiss the petition, and the court below concluded, that the attempt of the landlord to enforce the restriction in the lease limiting the use of the premises to tenant and members of the tenant’s immediate family constituted Unlawful discrimination against the tenant upon the basis of her “marital status” (Executive Law, §296, subd 5, par [a]).
*594 We are cognizant that section 300 of the Executive Law provides that “[t]he provisions of this article [including of course § 296, subd 5, par (a)] shall be construed liberally for the accomplishment of the purposes thereof” and that section Bl-11.0 of the Administrative Code similarly so provides (see, also, City of Schenectady v State Div. of Human Rights, 37 NY2d 421, 428). There is nonetheless little in this sparse record to suggest that the landlord, in seeking to enforce the restrictive covenant in the lease limiting occupancy to the tenant and members of tenant’s immediate family, had any interest in the marital status of the tenant Weiss or the occupant Wertheimer, other than that Wertheimer was not a member of Weiss’ immediate family. An interest in ascertaining whether an occupant qualifies for occupancy of a demised premises, under a lease provision authorizing occupancy by tenant and members of tenant’s immediate family (i.e., whether the occupant is a spouse, son, parent or other relation within the scope of “immediate family”) does not ipso facto connote discrimination on the basis of “marital status”; thus we are not persuaded by this sparse record that there has been a showing of discrimination by the landlord against the tenant upon the basis of her “marital status”. While clearly no cause of action lies under a restrictive covenant in a lease limiting occupancy to the tenant and members of tenant’s immediate family, where the tenant has married a newly arrived occupant, it does not follow that a landlord is automatically precluded by section 296 (subd 5, par [a]) of the Executive Law from enforcing such a restrictive covenant where the tenant and the new occupant are, for whatever reason, unmarried. In summary, landlord’s cause of action predicated upon the covenant in the specified lease restricting occupancy of the subject premises to the tenant and members of tenant’s immediate family does not appear to us to constitute discrimination per se on the basis of tenant’s “marital status”. In concluding that tenant failed to demonstrate that she is entitled to a dismissal of landlord’s petition pursuant to CPLR 3211 (subd [a], par 7), we do not, however, foreclose the tenant from offering proof at the time of trial that she is entitled to prevail in this proceeding because the landlord in maintaining this pro *595 ceeding is indeed unlawfully discriminating against her on the basis of her “marital status” (Executive Law, § 296, subd 5, par [a]). Contrary to the argument made by the landlord, the proscriptions set forth in section 296 (subd 5, par [a]) of the Executive Law do not only apply to circumstances existing at the inception of a landlord-tenant relationship. A landlord’s conduct during the course of a tenancy may be shown to violate the provisions of section 296 (subd 5, par [a]).