DECISION
The issues before the Court are whether plaintiffs' attorney is entitled to an award of attorney's fees arising from this matter; and if he is entitled to an attorney's fee, how much is he to be awarded?
This residential trespass and ejectment was commenced in the District Court in May of 2001. Based upon a notice of termination pursuant to G.L. 34-18-27 (1956, 1995 Reenactment) of the Residential Landlord and Tenant Act, plaintiffs sought to evict defendant, who was then their daughter-in-law.
Defendant, both in District Court and thereafter in Superior Court, argued that she was an owner in fact of the premises by virtue of plaintiffs making a gift of the premises to her and her then fianci, Anthony Della Grotta, Jr., the son of plaintiffs.
On appeal from the District Court, this Court, in a bench decision, found in favor of plaintiffs on their sole complaint of trespass and ejectment, denied defendant's counterclaim in Count I, promissory estoppel and in Count III, ownership of the premises, by virtue of a constructive trust. This Court, however, ruled in favor of defendant on Count II of her counterclaim that plaintiffs would be unjustly enriched if she were not compensated and made whole for improvements defendant made to the premises and awarded damages in the sum of $61,865.00.
Plaintiffs' attorney argues that pursuant to G.L. 34-18-43 he is entitled to an award of fees. The specific statute reads as follows:
 "If the rental agreement is terminated, the landlord has a claim for possession, for a sum for reasonable use and occupation subsequent to the termination, and for actual damages for breach of the rental agreement and reasonable attorney's fees." (Emphasis added). G.L. § 34-18-43 (1995 Reenactment).
Defendant argues that as there was no written or oral agreement establishing the amount of rent or the frequency of payment of rent between the parties before the notice of termination there can be no rental agreement to terminate.
While plaintiffs do not dispute the absence of a formal written or a specific oral agreement, plaintiffs' attorney argues there was an "implied agreement" allowing defendant and their son to reside at the premises without the payment of rent for as long as defendant was married to and living with plaintiffs' son and that, upon the filing for dissolution of the marriage and the order removing plaintiffs' son from the premises, plaintiff was allowed to commence this action. Further, that being successful, nothing prohibits plaintiffs from seeking a reasonable attorney's fee.
The legislature in enacting the "Residential Landlord and Tenant Act" expressly defined certain terms, including the term "rental agreement." G.L. 1956, § 34-18-11 entitled "Definitions state, in part . . .
 "subject to additional definitions contained in subsequent sections of this chapter which apply to specific sections thereof, and unless the contexts otherwise requires, in this chapter:
 (14) `Rental Agreement' means all agreements, written or oral . . . embodying the terms and conditions concerning the use and 2 occupancy of the building unit and premises and also includes any terms required by law."
In Tambor v. Miller, 792 A.2d 744 (R.I. 2002), the court addressed the claim by defendants, Robert Miller and Dora Miller, the owner of premises previously occupied by Daniel Tambor and Rami Johnson. Johnson was not a party to a written lease agreement and did not pay rent or give a security deposit, but who frequently stayed at leased premises The precise issue before the court was whether Johnson should be considered a tenant entitled to damages, return of part of a security deposit and attorney's fees. At trial, Johnson offered evidence that she stayed occasionally at Daniel's apartment when he was there and would take out the Millers' garbage. In discussing whether Johnson was a tenant, the court referred to § 34-18-11(14). The court observed "[T]here is no evidence in the record to demonstrate that there ever was any rental agreement, written or oral, between the Millers and Johnson. The mere fact that Johnson occasionally brought the Millers' garbage out for collection, without more, is insufficient even to imply that any such agreement ever existed." (emphasis added.) 792 A.2d at 745. The court in Tambor v.Miller, held "[c]onsequently, because Rami was never a party to any rental agreement with the Millers, she was not their tenant and she was not entitled to receive damages . . . under the Residential Landlord Tenant Act." (emphasis added.) Tambor, 792 A.2d at 746.
Based upon the facts proven at trial, this Court held that a rental agreement existed by implication between the parties. Based upon the teaching in Tambor v. Miller, it is axiomatic that unless defendant was a tenant she would not have been entitled to any damages on her claim for unjust enrichment arising out of plaintiffs' claim relying on the Residential Landlord and Tenant Act.
Turning now to the issue of attorney's fees, as the affidavit submitted by plaintiffs' counsel (Plaintiffs #1, full) illustrates that this eviction action was not routine and, based upon testimony at trial before this Court, very little, if anything, was conceded. A review of the pleadings, discovery and orders entered in the District Court also confirms that the issues raised by the parties were numerous, complicated and extensively litigated.
At the hearing on attorney's fees, counsel for plaintiffs testified. Additionally, plaintiffs' attorney offered the testimony of Michael Civittolo, Esquire, as to the reasonableness of the fee requested. In opposition, defendant offered the testimony of Raymond Pezza, Esquire. Both Civittolo and Pezza testified as expert witnesses.
Plaintiffs' attorney testified that he has been admitted to the practice of law in Rhode Island for approximately 26 years. That prior to January of 1984 he was an associate in the firm of Kiernan Rice. That since January of 1984, he has been a partner in Kiernan, Plunkett 
Redihan. He testified that the majority of his practice involves personal injury litigation on behalf of both plaintiffs and defendants. In the five years preceding the filing of this action in District Court, he personally handled between five and six residential landlord-tenant trespass and ejectment actions (T E's), however, only one that went through trial. He testified that customarily he charges his clients in these matters an hourly rate. That in all, the prior T E's in which he has been involved, no discovery was engaged in by either party.
Plaintiffs' attorney acknowledged on cross-examination that at a trial before this Court the amount of time consumed in presenting plaintiffs' case-in-chief amounted to approximately ten minutes. Defendant argues that the fee should be limited to that time as well as reasonable time expended, before trial, to present the case. If there had been no active defense to plaintiffs' complaint or if there had not been counterclaims raised by defendant, this argument would be persuasive. However, considering the multiple issues raised by defendant, it would be inequitable to award only a reasonable fee based solely on plaintiffs' complaint.
Plaintiffs' counsel in his affidavit (Plaintiffs' exhibit 1) requests a fee in the amount of $7,282.00 based upon an hourly fee of $110.00 and approximately sixty-seven hours devoted to this matter. The witness for plaintiffs' counsel testified that based upon his professional knowledge of the "applicant" and his review of the affidavit, his opinion was that the entries and time expended were reasonable, particularly the hourly fee of $110.00. The witness acknowledged he could not determine from his review of the itemized bill what portion related to plaintiffs' complaint as opposed to defendant's counterclaims.
Defendant's expert (Pezza) testified he had been admitted to practice law in Rhode Island since 1971. He classified himself as a general practitioner which includes handling over one hundred evictions during that time. Mr. Pezza's opinion that in a "typical" eviction for non-payment, the reasonable attorney's fee would range between $300.00 to $400.00, exclusive of costs. He further opined that based upon his review of the bill of plaintiffs' counsel, the majority of the services related to defendant's counterclaim and not plaintiffs' trespass and ejectment complaint. Mr. Pezza concluded his direct examination that a reasonable attorney's fee, in his opinion, would be between $1,500.00 to $1,800.00.
On cross-examination, Mr. Pezza did not quarrel with the hourly rate of plaintiffs' counsel. Mr. Pezza could only recall being involved in one trespass and ejectment matter where either party engaged in discovery. Mr. Pezza acknowledged that he would not have charged between $1,500.00 and $1,800.00 to represent plaintiffs in this action; he would have charged more.
The court in Colonial Plumbing Heating Supply Co. v. ContemporaryConstruction Co., 464 A.2d 741 (R.I. 1983); citing Palumbo v. UnitedStates Rubber, 102 R.I. 220 at 223-24, 229 A.2d 620 at 622-23 (CA. 1967) affirmed that:
 "An attorney's fee should be consistent with the services rendered, that is to say, which is fair and reasonable. What is fair and reasonable depends, of course, on the facts and circumstances of each case. We consider the amount in issue, the questions of law involved and whether they are unique or novel, the hours worked and the diligence displayed, the result obtained, and the experience, standing and ability of the attorney who rendered the services. Each of these factors is important, but no one is controlling." Colonial, 464 A.2d at 743.
Applying the principle and these factors pronounced by the court inPalumbo and affirmed in Colonial to the facts in this case, the Court rules as follows:
 1. The amount in issue — Testimony was offered that the unencumbered value of the subject premises was in excess of Two Hundred Ninety Thousand ($290,000) Dollars.
 2. The question of law — The question of an implied rental agreement is unique and novel. However, the question of law as to promissory estoppel, unjust enrichment and constructive trust, while not novel were unique, particularly in the context of this matter.
 3. The result obtained — Although it may be debatable if plaintiffs' lost more than they gained if this Court's decision on the merits is left undisturbed on appeal, the plaintiffs remain the owners and legally possess the real estate of a value over Two Hundred Ninety Thousand ($290,000) Dollars. Although defendant was awarded a sizable monetary judgment on her claim of unjust enrichment, plaintiffs obtained most of what they sought.
Reviewing the bill of plaintiff's counsel to his client (Plaintiff #1, full), the amount of time claimed was slightly over sixty-seven (67) hours. Defendant did not offer any evidence that the hourly amount charged was not fair or not reasonable. This Court, finds that some of the time expended was not reasonable given the testimony and evidence. Given the unique nature of this matter a "learning curve" should be allowed for plaintiffs' attorney. However, some of the time claimed appears, without further explanation, to be duplicative and therefore should not be entitled to compensation. This Court finds that the fair amount of time reasonably expended was fifty-eight 7/100 (58.70) hours, which, based upon the hourly rate of $110.00 per hour, amounts to a fee of Six Thousand, Four Hundred Fifty-Seven ($6,457) Dollars.
Therefore, plaintiffs' counsel is awarded a fee of $6,457.00 Dollars. Counsel for the prevailing party shall submit an order consistent with this decision.