OPINION OF THE COURT
Edward H. Lehner, J.
This holdover proceeding necessitates the court determining the effect of the recent Court of Appeals decision in Hudson View Props, v Weiss (59 NY2d 733) on other related appellate decisions. After reviewing other authorities, the court has concluded that the opinion is narrower than publicly discussed (see New York Times editorial of May 14) and probably does not possess the “disastrous consequences for untold thousands” as our Attorney-General is quoted as saying in the New York Times on said date.
Petitioner herein claims that respondent is a licensee of a deceased tenant Mrs. Wright and that it is entitled to possession of the premises. The testimony showed that Mrs. Wright entered into occupancy of this rent-stabilized apartment under a lease in 1968 and was in continual occupancy under various renewals until her death in August, 1982. Her daughter, in her capacity as administratrix, released the apartment to the landlord in November, 1982.
*214 Respondent claims entitlement to possession because he has lived there for 14 years with the deceased and has shared the same bed with her except during the last year of her life when she was ill with leukemia, during which period she slept in the living room and he in the bedroom. Although the deceased’s daughter characterized the respondent as a boarder of her mother, having paid her approximately $200 per month for use of the bedroom, the court finds that the respondent and Mrs. Wright were a family and lived together as man and wife without having been formally married.
It is clear and undisputed that if the parties were in fact married, the surviving spouse would be entitled to remain in possession under the Rent Stabilization Law (Administrative Code of City of New York, ch 51, tit YY). Moreover, prior to the rendering of the said Court of Appeals decision, this court was prepared to dismiss this proceeding on the authority of the Appellate Division decision in that case (86 AD2d 803) as well as: 420 East 80th Co. v Chin (115 Misc 2d 195 [App Term, 1st Dept]) and Avest Seventh Corp. v Ringelheim (116 Misc 2d 402 [App Term, 1st Dept]; see, also, Zimmerman v Burton, 107 Misc 2d 401; East 63 St. Assoc. v Falcon, NYLJ, Dec. 8, 1982, p 11, col 4).
However, such reversal requires a re-examination of the other cases cited to determine its effect thereon. In Hudson View Props, v Weiss (106 Misc 2d 251), the Civil Court dismissed, on motion, a summary proceeding in which the landlord claimed that the occupancy by a man who was not the husband of the tenant violated the lease provision which restricted occupancy to the tenant and members of the immediate family. The court agreed with the tenant’s argument that the landlord by instituting the proceeding was discriminating based on marital status in violation of section 296 (subd 5, par [a]) of the Executive Law.
In remanding the proceeding for trial, the Court of Appeals held that the statute was not violated, stating (p 735): “In this case, the issue arises not because the tenant is unmarried, but because the lease restricts occupancy of her apartment, as are all apartments in the building, to the tenant and the tenant’s immediate family. Tenant admits that an individual not part of her immediate family cur *215 rently occupies the apartment as his primary residence. Whether or not he could by marriage or otherwise become a part of her immediate family is not an issue. The landlord reserved the right by virtue of the covenant in the lease to restrict the occupants and the tenant agreed to this restriction. Were the additional tenant a female unrelated to the tenant, the lease would be violated without reference to marriage. The fact that the additional tenant here involved is a man with whom the tenant has a loving relationship is simply irrelevant. The applicability of that restriction does not depend on her marital status.”
The court concludes that such ruling has no effect on the holding of the Appellate Term in 420 East 80th Co. v Chin (supra), which is of course binding on this court. There, an unrelated male moved in with a male tenant and the landlord sought to evict based on the lease provision (p 195) limiting occupancy “‘to the tenant and immediate family of tenant and to no others’.” The Appellate Term held (p 196) that the statutory discrimination relied upon by the Appellate Division in Hudson View Props, (supra) was not applicable as the discrimination alleged was “based upon sexual or affectional preference, a status not protected under the Executive Law.” Nevertheless, the court dismissed the petition on what it characterized as “more basic grounds”, stating (pp 196,197): “A determination of what constitutes a violation of a ‘substantial’ obligation of a tenancy is to be made ‘with reference to the peculiar legal and factual setting in which it occurs’ (Matter of Park East Land Corp. v Finkelstein, 299 NY 70, 74). Judicial notice can be taken that the vacancy rate for rental apartments in this city is virtually nonexistent. Persons are sharing apartments in increasing numbers due to both economic necessity and changing social mores * * * In the housing field, these are not ordinary times and ‘strict adherence to technical concepts of landlord and tenant law’ which might have justified eviction in the past is now to be avoided (Matter of Park East Land Corp. v Finkelstein, supra, p 75). It is simply no longer feasible or desirable to mechanically impose eviction for breach of the ‘immediate family’ clause, nor do we think it productive to spend judicial time conjuring up artificial distinctions *216 among various types of sexual, fraternal, and economic relationships. Absent a showing of demonstrable prejudice to the landlord, violation of the legal occupancy laws, or waste to the property, this petition is dismissed.”
Thus, without relying on a statutory discrimination, our Appellate Term avoided an eviction based on a claim that the named tenant permitted an unauthorized person to occupy the apartment. Harmonizing the Court of Appeals decision in Hudson View Props, (supra) with the Chin case (supra) results in the court concluding that although a lease may be violated by an unauthorized occupant, as was the lease in the case at bar, the petitioner is nevertheless required to establish that the violation is substantial and prejudicial to the landlord. Although in Chin the occupants of the unit were increased from one to two, the court found no substantial violation. Here no evidence was presented by petitioner to establish any prejudice to it. Hence, if Mrs. Wright were still living, the court, even though no claim of waiver of the violation was proven, would dismiss the petition.
It is important to note that the salutary aspect of the Chin decision (supra) is that it does not require our housing courts to have to make inquiries of and findings with respect to the loving and sexual relationships between parties. Properly, the right to occupy an apartment should not be based on testimony as to whether the occupants sleep together or whether they in fact love each other. Knowing whether one “loves” another is difficult enough for one to determine within one’s own heart. More so for a court. Further, it does not encourage adoptions for the sole purpose of becoming part of a person’s immediate family. (See Matter of Adult Anonymous II, 88 AD2d 30.)
Having said the above, the court comes to the more difficult issue of determining the nature of the rights, if any, possessed by the respondent here who is the surviving unrelated co-occupant of the apartment. The court is constrained to conclude that he has none. He could have been evicted by Mrs. Wright during her lifetime (see Young v Carruth, 113 Misc 2d 586 [App Term, 1st Dept], affd 89 AD2d 466). His occupancy was in violation of the lease. Waiver was not claimed or proved. Hence, although under *217 Chin (supra) the landlord may not have been able to evict based on his occupancy, the landlord is under no obligation to offer him a renewal lease and the consequential right to purchase should there be a conversion to co-operative ownership. One reason for providing a landlord with greater remedies after the death of the tenant is that during lifetime the parties were in a contractual relationship, with the tenant being liable for any breach of the lease. After death the situation is obviously different and the law will not force a landlord, who did not consent (by waiver or otherwise) to the unauthorized occupancy, to offer such person a lease.
Therefore, the court finds that petitioner is entitled to a final judgment of possession with a stay of execution of the warrant to September 30, 1983 provided respondent pays all past-due use and occupancy, at the rate being paid prior to the institution of this proceeding, by May 31, and pays use and occupancy at said rate on the first day of each and every month thereafter. Should any such payments not be made, petitioner may, on five days’ written notice to respondent’s counsel, move to accelerate the issuance of the warrant.